# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZELTIQ AESTHETICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SUN SERENITY SPA; JACQUIE PEREZ, <br><br> Defendants. | CASE NO. 1:15-CV-1204-DAD-SMS <br><br> FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT <br><br> Doc. 13 |

Plaintiff Zeltiq Aesthetics, Inc. brings this suit against Sun Serenity Spa and Jacquie Perez ("Defendants") for trademark infringement, false advertising, and unfair competition under 15 U.S.C. §§ 1051 *et seq*. (the "Lanham Act"), and unfair competition under California law. Having been duly served, neither defendant has entered an appearance in this action. Plaintiff moves for default judgment, a permanent injunction, and attorney's fees.

I. BACKGROUND

Plaintiff's complaint alleges that it is the exclusive licensee of the Cryoliposis process, which is a patented body-contouring procedure involving freezing fat cells without damage to the skin. Doc. 1 ¶ 8. Plaintiff is the only party in the U.S. to have obtained FDA clearance to offer a Cryoliposis device. Doc. 1 ¶ 13. Plaintiff markets its Cryoliposis device and system under the registered trademarks Zeltiq® and CoolSculpting®, which it distributes to medical professionals who receive training on proper use of the device in compliance with FDA clearance. Doc. 1 ¶ 14. Plaintiff's CoolSculpting system has received national press coverage, including features on television shows including The Dr. Oz Show. Doc. 1 ¶ 16.

Plaintiff alleges that defendant Sun Serenity Spa is an unincorporated business in Patterson, California owned by defendant Jacquie Perez. Doc. 1 ¶¶ 3-4. Defendants advertise and perform body-contouring services using cooling technology using a device that is not an authorized CoolSculpting device. Doc. 1 ¶ 20. Defendants falsely identified these services as "CoolSculpting" and "FDA approved." Doc. 1 ¶ 21. Defendants maintained a website that included a video clip of Plaintiff's CoolSculpting procedure from The Dr. Oz Show. Doc. 1 ¶ 22. A screenshot of Defendant's website at that time placed the video clip under the heading "Lipo-Freeze / ColdSculpting [sic]." Doc. 1, Exh. B.

Plaintiff learned of Defendants' conduct, and sent a letter to Defendants advising them of its position and seeking discontinuation of Defendant's unlawful actions. Doc. 1 ¶ 23. Defendants continued to offer the cooling service but began to advertise the service as "Lipo Freeze." 25. Defendants did not remove the video clip showing Plaintiff's CoolSculpting procedure. Doc. 1 ¶ 26. A screenshot of Defendant's website places the video clip under the heading "Lipo-Freeze." Use of the Lipo Freeze device has not been cleared by the FDA. Doc. 1, Exh. D.

Plaintiff filed the complaint in this action on July 30, 2015. Doc. 1. Summonses were returned executed as to both defendants with answers due on September 1, 2015. Doc. 6. No answer or appearance was filed or has been filed to date. Plaintiff requested entry of default as to both defendants on September 22, 2015, which was entered by the clerk. Docs. 7-9.

II.     DEFAULT JUDGMENT

Entry of default judgment is governed by Federal Rule of Civil Procedure 55, which allows the court to enter default judgment against a defendant who has failed to plead in an action. Fed. R. Civ. P. 55(a)-(b). The Ninth Circuit has provided seven factors for consideration by the district court to determine whether to enter a default judgment, known as the *Eitel* factors. They are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "'The general rule of law is that upon

1  default the factual allegations of the complaint, except those relating to the amount of damages,
2  will be taken as true.'" *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.
3  1987) (*quoting Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977)).

Here, Plaintiff's substantive claims, which will be more thoroughly discussed below, have substantial merit and are adequately pled in the complaint. Plaintiff does not seek money damages. Plaintiff's attached documents make it unlikely that there will be a dispute concerning the material facts. Defendants have not appeared in this action, and there is no evidence that the default was due to excusable neglect. Plaintiff will not be able to obtain relief without default judgment. Hence, the balance of the *Eitel* factors, supported by the following discussion on the merits, supports a finding that default judgment is proper.

A.  Trademark Infringement

Plaintiff alleges that Defendants infringed on its trademark by using the CoolSculpting mark in Defendants' advertising materials, including on their website.[1] A defendant is liable for trademark infringement when it uses, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale of goods or services which is likely to cause confusion. 15 U.S.C. § 1114(1). To prevail on a claim of trademark infringement under the Lanham Act, a party must prove that it has "a protectable ownership interest in the mark" and "that the defendant's use of the mark is likely to cause consumer confusion." *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).

*1.  Mootness*

Upon receiving a letter from Plaintiff, Defendants voluntarily ceased using the CoolSculpting mark in their marketing materials. They continued to use the mark by hosting a video demonstrating Plaintiff's procedure with "CoolSculpting" in the title. At this time, it is not certain whether the website is still active or whether the video is still viewable on the website.

---

[1] Plaintiff's allegations that Defendants made the false statement that Defendants' body sculpting service using cooling technology was FDA approved does not raise a trademark or trade name claim under the Lanham Act. Plaintiff's allegations that Defendants' body sculpting service was unlawful or dangerous also do not raise a claim under the Lanham Act.

However, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982). "Otherwise a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013). A defendant's voluntary compliance moots a case when it shows "that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id*. (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc*., 528 U. S. 167, 190 (2000)). Here, Defendants have not appeared in the action, and it cannot be absolutely clear that the unpermitted use of the mark could not be reasonably expected to recur. Defendants' ceasing to use the CoolSculpting mark does not moot this case.

         *2. Likelihood of Confusion*

Plaintiff has demonstrated that it holds the CoolSculpting mark and that Defendants used the mark without Plaintiff's consent in their marketing materials and on their website in connection with the sale of their body-sculpting procedure using cooling technology. It also sufficiently demonstrates that Defendants' use of the mark is likely to cause customer confusion.

The "core element of trademark infringement" is whether the defendant's conduct "is likely to confuse customers about the source of the products." *E. & J. Gallo Winery v. Gallo Cattle Co*., 967 F.2d 1280, 1290 (9th Cir. 1992). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998)(citation omitted).

The Ninth Circuit has identified and expounded on eight factors in determining whether confusion between related goods likely: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). These factors, known as the *Sleekcraft* factors, are

"non-exhaustive, and […] should be applied flexibly, particularly in the context of Internet commerce." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1149 (9th Cir. 2011). Even if the confusion is dispelled before an actual sale occurs, the "initial interest" confusion that creates initial interest in a competitor's product "impermissibly capitalizes on the goodwill associated with a mark and is therefore actionable trademark infringement." *Playboy Enters. v. Netscape Communs. Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004).

Here, Plaintiff's mark is strong. It is somewhat descriptive and somewhat fanciful: a "suggestive" mark which is protected without proof of secondary meaning. *See Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108 (9th Cir. 2010). Plaintiff has also strengthened its mark by advertising, and it has gained some amount of public recognition. Plaintiff and Defendant purport to offer the same service –body sculpting using cooling technology. Defendants used Plaintiff's registered mark in their marketing materials and their website. Defendants market their service to the same audience as Plaintiff, although Defendants' audience is most likely limited to those who might access their services in their geographic area. Defendants' are likely to have been aware that their service was not CoolSculpting when they offered CoolSculpting in their marketing materials, and that the CoolSculpting procedure shown on their website was not the same service offered at their facility. It appears that they posted the CoolSculpting demonstration video to their website in order to demonstrate what was entailed in their "Lipo-Freeze" procedure. There is no evidence of actual confusion between Plaintiff's service and Defendants' and no evidence has been presented of the degree of care likely to be exercised by the purchaser. Overall, it appears that there is a likelihood of confusion associating Plaintiff's mark with Defendants' service. It is highly likely that a reasonably prudent consumer would see Defendants' advertising or website and believe that Defendants offered Plaintiff's CoolSculpting procedure. Plaintiff has demonstrated that its trademark infringement claim has substantial merit.

B. <u>False Advertising and False Designation of Origin</u>

The Lanham Act also prohibits the use of any "word, term, name, symbol, or device" in commerce in connection with any goods or service which, "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin" of its goods

or services. 15 U.S.C. § 1125(a)(1)(B). In order to state a claim for false advertising under the Lanham Act (15 U.S.C. § 1125(a)(1)(B)), a plaintiff must allege "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)(internal citations omitted).

As discussed above, Defendants made the false statement that they offered CoolSculpting through their marketing materials and falsely implied that their service was the same as Plaintiff's CoolSculpting procedure. This statement tended to deceive Defendants' audience and would likely injure Plaintiff by lost customers and a lessening of the goodwill associated with its products. Plaintiff asserts that it has received complaints from users of competing body-sculpting procedures using cooling technology that has physically harmed them, thereby reducing Plaintiff's goodwill. Plaintiff has demonstrated that its 15 U.S.C. § 1125(a)(1)(B) claim has substantial merit.

### C. Federal Unfair Competition

The Lanham Act also prohibits any person from using any "word, term, name, symbol, or device" in commerce in connection with any goods or service which, "is likely to cause confusion […] as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval" of its goods or services by another person. 15 U.S.C. § 1125(a)(1)(A).

For the same reasons discussed above, Plaintiff has demonstrated that its 15 U.S.C. § 1125(a)(1)(A) claim has substantial merit.

### D. California Unfair Competition

California's unfair competition law prohibits, and provides civil remedies for, unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011). "The

Legislature intended this sweeping language to include anything that can properly be called a business practice and that at the same time is forbidden by law." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1266 (1992)(internal quotations and citations omitted). "[S]tate common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act." *Seltzer v. Green Day, Inc*., 725 F.3d 1170, 1180 n.1 (9th Cir. 2013)(internal quotations omitted).

Plaintiff's California unfair competition claim is brought exclusively on the basis of its Lanham Act claims. Hence, because the Plaintiff's Lanham Act claims have substantial merit, Plaintiff's California unfair competition claim also has substantial merit.

III.   PERMANENT INJUNCTION

Plaintiff requests a permanent injunction enjoining Defendants from 1) using the CoolSculpting, or Plaintiff's other marks in connection with the sale of Defendants' goods or services; 2) making any statement that are likely to lead members of the public to believe that devices owned or services performed by Defendants are associated with Zeltiq; 3) providing services that are the clinical equivalent of any goods or services offered by Zeltiq; 4) displaying any text, graphic, or other materials owned by or emanating from Zeltiq or its authorized providers concerning Cryoliposis and the results therefrom; and 5) taking any action likely to cause public confusion as to the connection, affiliation, sponsorship, approval, or other association of Defendants' goods or services with Zeltiq and its goods or services. Plaintiff also requests an order requiring Defendants to surrender their Lipo Freeze device.

The Lanham Act gives the court "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under [the Lanham Act]." 15 U.S.C. § 1116(a). An injunction following a determination of a trademark infringement is not automatic and is subject to the principles of equity. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt*., 736 F.3d 1239, 1249 (9th Cir. 2013). A plaintiff seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that

injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C*., 547 U.S. 388, 391 (2006).

To obtain a permanent injunction in a trademark infringement action, actual irreparable harm must be demonstrated. *Herb Reed*, 736 F. 3d at 1249. A finding of irreparable harm is not presumed upon a finding of trademark infringement, but must be grounded in evidence. *Id*. "Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm." *Id*. at 1250. However, "platitudes" and the possibility of harm are insufficient to demonstrate actual irreparable harm. *Id*. Also, evidence of customer confusion is not evidence of irreparable harm. *Id*.; *San Miguel Pure Foods Co. v. Ramar Int'l Corp*., 2015 U.S. App. LEXIS 15145, *10-11 (9th Cir. Cal. Aug. 27, 2015).

Here, Plaintiff has not demonstrated actual irreparable harm. Plaintiff's attached declaration by Plaintiff's Senior Director of Clinical and Medical Affairs states that Plaintiff "often gets complaints from patients who have been injured by treatments administered by individuals not trained or authorized by Zeltiq, using unapproved, non-Zeltiq devices, but who nonetheless claim to be providing 'CoolSculpting' treatments." Doc. 13, Exh. 3 at 2:22-25. She states that the advertising and distribution of these knock-off devices is "likely to cause harm" to Plaintiff in the form of harm to its reputation. Id. at 3:2-14. Plaintiff argues in its motion, based on the attached declaration, that Defendants' conduct "creates a significant risk of irreparable harm to Zeltiq's reputation and goodwill associated with its brand." This evidence does not support a finding of actual irreparable harm. Plaintiff has not submitted evidence that Defendants' use of its mark have caused Plaintiff to suffer actual harm. Plaintiff merely speculates that Defendants' unauthorized use of their mark may harm its reputation because other unauthorized devices unlawfully using Plaintiff's mark have physically harmed consumers and caused them to complain. Plaintiff's harm allegations are not grounded in evidence. Without a showing of actual irreparable harm, a permanent injunction enjoining Defendants from using Plaintiff's marks is not appropriate.

Further, Plaintiff requests as part of the injunction that Defendants be required to surrender

the device to an unspecified party "in order to ensure that Defendants do not dispose of the accused device to a third party who may not be subject to the Court's injunction, who may initiate similar misconduct by advertising and administering services using this knock-off device that is not clinically proven, not FDA cleared, and does not perform treatments that are the clinical equivalent of Zeltiq's CoolSculpting device." Doc. 13 at 16:16-21. This request is sufficiently overbroad and not within the scope of this action. Plaintiff has brought an action for trademark infringement and has presented no evidence or allegations that the device itself is infringing on Plaintiff's trademark. Defendants' alleged use of a medical device not cleared by the FDA does not raise a trademark issue. Plaintiff simply does not want Defendants or a hypothetical third party to offer a competing service. This request is inappropriate and beyond the scope of this action. Similarly, Plaintiff's request to enjoin Defendants from performing services that are the clinical equivalent of any services offered by Plaintiff is beyond the scope of this action.

IV. ATTORNEY'S FEES

Plaintiff seeks $14,930 in attorney's fees, arguing that the willfulness of Defendants' actions warrants an award of reasonable attorney's fees.

An award of reasonable attorneys' fees and costs is expressly provided for in "exceptional cases" of trademark infringement. 15 U.S.C. § 1117(a); see also Fed. R. Civ. P. 54(d). "A case is considered exceptional when the infringement is malicious, fraudulent, deliberate, or willful." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1078 (9th Cir. 2015)(internal quotations omitted). Egregious conduct and bad faith are not required. *Id*. "We consider the relief obtained, […] and whether the relevant area of law was unclear when the defendant's conduct occurred." *Id*. (internal citations omitted). A finding that a case is exceptional does not require the district court to award attorneys' fees –"in an exceptional case, the district court 'may' (or may not) award fees." *Id*. at 1079. "The 'Senate Report expressly commends this decision to the discretion of the [trial] court.'" *E.&J. Gallo Winery v. Proximo Spirits, Inc*., 583 Fed. Appx. 632, 636 (9th Cir. 2014)(*citing Polo Fashions, Inc. v. Dick Bruhn, Inc*., 793 F.2d 1132, 1134 (9th Cir. 1986)).

"[T]he court may take plaintiffs' failure to recover damages into account when exercising

its discretion to award fees." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011). The court must also consider whether the plaintiff obtained a judgment and an injunction that ameliorate a serious public harm, and weigh the unlawfulness of the defendant's conduct. *Id*.

Defendants were on notice of their unlawful activity, including the use of the CoolSculpting video, and they likely knew that they were not authorized by Plaintiff to use the CoolSculpting mark in their promotional materials. Therefore, this case is "exceptional." However, an award of fees is not automatic. Here, there is no evidence of actual harm to Plaintiff or profit to Defendants. Plaintiff has not requested monetary damages, and the injunction enjoining Defendants from using Plaintiff's mark does not ameliorate a "serious public harm." Defendants also attempted to comply with Plaintiff's request to discontinue using its mark by removing it from their marketing materials.  Hence, Plaintiff's request for attorney's fees should be denied.

V.     RECOMMENDATION

For the foregoing reasons, it is hereby RECOMMENDED as follows:

1. Plaintiff's motion for default judgment be GRANTED against Defendant Sun Serenity Spa and Defendant Jacquie Perez, with joint and several liability, for violations of 15 U.S.C. § 1114, 15 U.S.C. § 1125(a)(1)(B), 15 U.S.C. § 1125(a)(1)(A), and California Business and Professions Code § 17200;
2. Plaintiff's request for a permanent injunction be DENIED;
3. Plaintiff's request for attorney's fees be DENIED.

These findings and recommendations are submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, Petitioner may file written objections with the Court, serving a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District

1 | Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 17, 2015**              **/s/ Sandra M. Snyder**
UNITED STATES MAGISTRATE JUDGE